UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 18-0534 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JACKEL INTERNATIONAL LIMITED, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court are Plaintiff Luv N'Care, Ltd.'s ("LNC") Motion to Amend Complaint [Doc. No. 38] and two Motions for Sanctions [Doc. Nos. 28 & 47] filed by Defendants Mayborn Group Limited, Jackel International Limited, Mayborn USA, Inc., Jackel China, Ltd., Mayborn Anz Pty, Ltd., and Product Marketing Mayborn, Ltd.

For the following reasons, LNC's Motion to Amend Complaint is GRANTED, Jackel's Motion for Sanctions [Doc. No. 28] is DENIED AS MOOT in part and otherwise DENIED, and Jackel's second Motion for Sanctions [Doc. No. 47] is DENIED.

I.  ALLEGED FACTS AND PROCEDURAL HISTORY

LNC is a Louisiana corporation with its place of business in Monroe, Louisiana. LNC is a family-owned business that designs, manufactures, and sells baby products under the "Nuby" brand name.

Jackel International, Mayborn USA, Mayborn ANZ, and Product Marketing Mayborn, Ltd., are wholly-owned subsidiaries of Mayborn Group Limited, a privately held English company, which is owned by Jake Acquisitions Limited. Jackel China, Ltd., is primarily owned by Product Marketing Mayborn, Ltd. Jake Acquisitions Limited is ultimately owned by Shanghai Jahwa

United Co. Ltd., which is publicly traded in China. The entity Defendants, which the Court will collectively refer to as "Jackel,"[1] are also in the business of designing, manufacturing, marketing, and selling baby products. Jackel sells its own products under the brand name Tommee Tippee.

In 2003, Jackel and LNC entered into a distribution agreement under which Jackel served as the exclusive distributor of LNC products in Great Britain, Ireland, and Gibralter. The 2003 agreement was replaced by a second agreement in 2008, which terminated on April 1, 2010.

The 2008 Agreement included two provisions governing use of proprietary designs or information:

> 15(B). Distributor hereby acknowledges and agrees not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures and methods, [or] any other proprietary designs or information without LNC's written permission.
>
> 19. During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, drawings, business plans, prototypes, procedures, and methods [or] any other proprietary designs or information of LNC without the written consent of the other party.

[Doc. No. 1-6 at ¶¶ 15(B),19].

On May 24, 2010, LNC brought suit against Jackel alleging breach of the 2008 Agreement by selling certain soft-spout, flip-top, and straw cups with a silicone compression valve ("LNC I"). That case went to trial, and jury found in favor of LNC and against Jackel on LNC's claims of breach of the distribution agreements and the Louisiana Unfair Trade Practices Act ("LUTPA").

---

[1]Defendants have referred to themselves collectively as "Mayborn," while LNC refers to them as "Jackel." The Court has no preference, but uses "Jackel" to be consistent with the prior cases involving these parties and to avoid confusion.

The May 22, 2013 Judgment provided that Jackel breached the 2003 or 2008 distribution agreements "with respect to Jackel's (1) soft spout cups; (2) flip-top cup; and (3) straw cup." More specifically, the "Litigated Products" identified in Exhibit A to the Judgment: (1) First Cup; (2) Kids on the Go Active Cup; (3) Tip It Up Cup; (4) Tip It Up Trainer Cup; (5) Tip It Up Beaker Cup; (6) Tip It Up Sportster Cup; and (7) Tip It Up Flip Top Cup. [Jackel's Exh. 8; Tr. 93:10-20]; [Doc. No. 1-4]. The jury further found that Jackel's actions violated the LUTPA. *Id.*

Damages in the amount of $754,887.64 were awarded through December 31, 2102, with pre-judgment and post-judgment interest. LNC was also awarded costs and attorneys' fees. Judgment was entered in favor of Jackel and against LNC on Jackel's Anti-Cybersquatting Consumer Protection Act claim, and Jackel was awarded damages of $2,000.00.

The Jackel I Court also entered a permanent injunction enjoining Jackel from selling any of the Litigated Products "as well as any further versions thereof" or other non-litigated products not in existence at the commencement of the January 2013 trial that are copies and/or colorable imitations of LNC's silicone compression valve, i.e., "(1) soft spout cups; (2) flip-top cups; or (3) straw cups." [LNC's Exh. 9].

Shortly before the entry of final judgement in LNC I, on May 3, 2013, LNC filed a second state court action ("LNC II") in which LNC alleged that Jackel's sales of "additional products" breached the 2008 distribution agreement and violated LUTPA. [Doc. No. 11, Exh. D]. Jackel removed this lawsuit to federal court. LNC voluntarily dismissed LNC II on August 27, 2013.

Although all parties appealed the judgment in LNC I, the appeal was settled and dismissed on November 21, 2013. That settlement agreement contained a reservation of rights: "Nor shall

anything within this Agreement be deemed a settlement or withdrawal of any claims or defenses between the LNC Parties and the [Jackel] Parties relating to [LNC II ] or the Threatened Hard Top Cups Action or the products accused therein, all rights with respect to which are expressly reserved by the parties hereto." [LNC's Exhibit 11, p. 3; Tr. 97:10-24, 99:3-5, 99-21-25].

On August 14, 2014, LNC filed a third action ("LNC III") against Jackel. *See Luv N' Care, Ltd. v. Jackel Int'l, Ltd*., No. 2:14-cv-855, 2015 Westlaw 4734701 (E.D. Tex. Aug. 8, 2015). In that lawsuit, LNC focused on the same hard-top cups, but added patent infringement claims to the breach and LUTPA claims. The district court dismissed LNC's breach of the distribution agreements and LUTPA claims as barred by res judicata. *Id.* The patent case settled, and the *res judicata* decision was never appealed. A final judgement in LNC III issued on December 18, 2015.

On March 23, 2018, LNC filed suit against Jackel in the Fourth Judicial District Court, Ouachita Parish, Louisiana. LNC's original Petition alleges breach of the 2008 Agreement and accuses Jackel of selling products with certain allegedly proprietary features copied from LNC.

Jackel served its original motion for sanctions on LNC on July 25, 2018. [Doc. No. 28-3]. After waiting the requisite twenty-one days, Jackel then filed its Motion for Sanctions. [Doc. No. 28- 2].

On September 12, 2018, LNC attempted to file an amended complaint. [Doc. No. 36]. Because leave of Court was required, LNC filed its Motion to Amend Complaint with the attached proposed pleading, on September 17, 2018. [Doc. No. 38].

In the proposed amended complaint, LNC dropped the claim that Jackel breached the agreements by selling "cup products with multiple tops for transitions between nipples and spouts as a child grows while using the same cup body." [Doc. No. 1-2, ¶ 29, Exs. 18–21.]

The amended complaint changes other claims too, by enumerating fourteen features (instead of four features), listed as the "LNC Product Designs." that it allegedly disclosed and shared with Jackel. [Proposed Amended Complaint, ¶18.] These designs vary from the all-encompassing "cup with a soft or silicon top" to the unspecific "cup with a sculptured body" and even include a catch-all claim to "the configurations of LNC's products." [Id.].

On September 20, 2018, LNC also filed a memorandum in opposition to Jackel's original Motion for Sanctions. [Doc. No. 40].

On October 4, 2018, Jackel filed a reply in support of its original Motion for Sanctions. [Doc. No. 42].

On November 8, 2018, Jackel filed a second Motion for Sanctions [Doc. No. 47]. Jackel moves the Court to sanction LNC for filing a meritless lawsuit by dismissing the case with prejudice, awarding fees and costs, and any other appropriate sanctions. LNC opposed the second Motion for Sanctions on December 3, 2018. [Doc. No. 57].

On December 5, 2018, the Court held a hearing on the pending Motions for Sanctions. Jackel presented Steve Parkin as a witness, as well as calling LNC owner, Eddie Hakim ("Hakim"), and LNC attorneys, Joe D. Guerriero and Bob Chiavello, as witnesses. LNC presented Hakim and its counsel, Hartwell Morse, as witnesses. At the conclusion of the hearing, the Court set a post-hearing briefing schedule.

On January 11, 2019, Jackel filed a supplemental memorandum in support of its Motions for Sanctions. [Doc. No. 73].

On February 1, 2019, LNC filed a supplemental memorandum in opposition to Jackel's Motions for Sanctions.

On February 8, 2019, Jackel filed a supplemental reply in support of its Motions for Sanctions. This matter is now ripe.

## II. LAW AND ANALYSIS

### A. Motion to Amend Complaint

LNC moves the Court for leave to amend its Complaint, at least in part to address the deficiencies alleged by Jackel.

A plaintiff's motion to amend its complaint is generally determined pursuant to the standard of FED. R. CIV. P. 15(a). A trial court's denial of a motion to amend is reviewed for an abuse of discretion, but that discretion is limited by the lenient standard in Rule 15(a), which states "that leave to amend shall be freely given when justice so requires." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001) (quoting *Lowery v. Texas A&M Univ. System*, 117 F.3d 242, 245-46 (5th Cir. 1997)). This standard is broadly construed and there is a strong presumption in favor of liberal pleading. *See Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).

Given the early stage of the litigation, the arguments of counsel, and a review of the presentation at the hearing, the Court finds that leave should be granted in this instance. Accordingly, LNC's Motion to Amend Complaint [Doc. No. 38] is GRANTED.

Jackel's original Motion for Sanctions is based on LNC's allegations in its Complaint prior to amendment. To the extent that arguments are directed toward allegations contained solely in the original Complaint, the motion [Doc. No. 28] is now DENIED AS MOOT. However, some of Jackel's arguments in its original Motion for Sanctions apply to the allegations in the Amended Complaint as well. The parties had the opportunity to address the allegations in the Amended Complaint at the hearing and in their post-hearing briefs. Therefore, the Court will consider

6

Jackel's arguments in support of both its original Motion for Sanctions and its Amended Motion for Sanctions to the extent that they applied to the allegations contained in the Amended Complaint.

**B. Motions for Sanctions**

Jackel characterizes the narrow issue before the Court as whether LNC had "a good-faith basis to assert the claims it has articulated in this case, given its knowledge and the history between the parties?" [Doc. No. 73, p. 6]. Jackel contends that the answer to that query is "no," while LNC contends that the answer is "yes."

In support of its motions, Jackel relies on Federal Rule of Civil Procedure 11 and Louisiana Code of Civil Procedure Article 863, as this matter was originally filed on state court.

Rule 11(b) provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> . . . .

FED. R. CIV. P. 11(b). Similarly, Article 863 provides:

> T]he signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
>
> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
>
> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> . . . .

LA. CODE CIV. P. ART. 863(B).

In determining compliance with Rule 11, an attorney is measured under a standard of objective reasonableness based on the circumstances. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802–03 (5th Cir. 2003) (en banc). The reasonableness of the conduct involved is to be viewed at the time counsel signed the document alleged to be the basis for the Rule 11 violation, commonly referred to as the "snapshot rule." *Marceaux v. Lafayette City Par. Consol. Gov't*, 14 F. Supp. 3d 760, 766 (W.D. La. 2014). This rule "ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

The determination of a Rule 11 motion is not a determination of the merits of the action. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990). "Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* To succeed on their request for Rule 11 sanctions, Jackel must establish that LNC lacked a reasonable basis for its allegations at the time that it filed its federal court pleadings. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). This determination is a

"fact intensive inquiry" that turns on an "assessment of the gravity of the conduct at issue" and is measured by an objective standard of reasonableness under the circumstances. *Id.* at 872-73; *see also Smith v. Our Lady of the Lake Hosp.*, 960 F.2d 439, 444 (5th Cir. 1992) (reversing the imposition of Rule 11 sanctions, although the Court "doubted the merits of Smith's suit," and finding that "the attorneys' investigation, while not perfect, was reasonable under the circumstances").

Likewise, the case law interpreting Article 863 makes clear that litigants and their counsel must make an objectively reasonable inquiry into the facts and law supporting the petition or other pleading. *See Graves v. Fields*, 35,411 (La. App. 2d Cir. 12/19/01), 803 So.2d 392. Article 863 is intended only for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter. *Caldwell v. Griggs*, 40,838 (La. App. 2d Cir.3/8/06), 924 So.2d 464 (citing *Green v. Wal-Mart Store No. 1163*, 96-1124 (La. App. 4th Cir.10/17/96), 684 So.2d 966). "Only when the evidence is clear that there is no justification for the legal right exercised should sanctions be considered." *Woods v. Woods*, 43,182 (La. App. 2 Cir. 6/11/08), 987 So. 2d 339, 347, writ denied, 2008-2256 (La. 11/21/08), 996 So. 2d 1110.

In this case, the entirety of Jackel's oral and written arguments and presentation at the hearing attack the merits of LNC's case, either rejecting LNC's claims as "implausible" or by relying on the doctrine of *res judicata*. In response, LNC has provided affidavits, testimony, and other evidence from its counsel and principal, Hakim, to support the filing of the Petition and further to show that they have amended the original petition to address Jackel's allegations and concerns. LNC presented testimony from three of its attorneys to show the inquiry made prior to the filing of the lawsuit. LNC also presented testimony from Hakim to support LNC's factual allegations the company recently discovered that one or more of the Jackel Parties are selling cups and tumblers that have either copied

or adopted colorable imitations of one or more of additional LNC product designs and/or used compression to remove liquid therefrom, all in violation of the 2003 and 2008 Distributorship Agreements, that they were not aware of the allegedly Breaching Products during the pendency of the prior lawsuits, and had no basis to believe that Jackel was selling additional products that included one or more of LNC's product designs.

While the parties have made extensive arguments and presented evidence about the different products produced by Jackel prior to the 2003 agreement and the various features of the products at issue in the current litigation, all of these arguments go to the very merits of the litigation. To rule in Jackel's favor at this stage, the Court would have to make extensive factual and legal determinations before any substantive motion has been filed or any discovery conducted. It may well be that Jackel has the right to seek and, perhaps, even obtain a judgment in its favor under a Rule 12(b)(6) or Rule 56 analysis. However, the Court cannot and will not make such a determination at the outset of the litigation. Based on the evidence and testimony presented, the Court cannot find, at this stage, that LNC abused the judicial process and take the extraordinary action of dismissing LNC's actions with prejudice. If Jackel ultimately prevails on one or more of LNC's claims, it may certainly re-urge its motion for sanctions, but the Court will not order sanctions at this time. Therefore, Jackel's Motions for Sanctions are DENIED.

On the other hand, contrary to LNC's arguments, the Court finds that it is not entitled to attorneys' fees and costs. Given the history of the litigation between the parties and prior rulings in state and federal court, Jackel has a reasonable basis for pursuing the Motions for Sanctions. The Court finds only that such sanctions are not appropriate at this time.

### III. CONCLUSION

For the foregoing reasons, LNC's Motion to Amend Complaint [Doc. No. 38] is GRANTED, Jackel's Motion for Sanctions [Doc. No. 28] is DENIED AS MOOT in part and otherwise DENIED, and Jackel's second Motion for Sanctions [Doc. No. 47] is DENIED.

MONROE, LOUISIANA, this 14th day of March, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE