**UNITED STATES ISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **LUV N' CARE, LTD.**<br>*Plaintiff,*<br>*v.*<br>**JACKEL INTERNATIONAL LTD., et al.,**<br>*Defendants.* | Civil Action No.: 3:18-cv-00534<br>Honorable Judge Terry A. Doughty<br>Magistrate Judge Joseph H. L. Perez-Montes<br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

This is a complaint for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law. Plaintiff Luv n' care, Ltd. (LNC) entered into Distribution Agreements with Defendant Jackel International, Ltd. (Jackel), on April 17, 2003 and April 17, 2008 and entered into a First Settlement Agreement with Jackel, Mayborn USA, Inc. (MaybornUS), Jackel China Limited (Jackel China), Mayborn ANZ Pty. Limited (Mayborn ANZ), Product Marketing Mayborn Limited (Mayborn China) and Mayborn Group Limited (Mayborn Group) (collectively the Jackel Parties) on November 12, 2013 and a Second Settlement Agreement with Jackel and MaybornUS on or about December 17, 2015. Pursuant to the terms and conditions of the 2003 and 2008 Distribution Agreements, and in consideration for Jackel becoming the exclusive distributor for LNC in the UK, Ireland and Gibraltar, Jackel agreed that after the expiration of the Distribution Agreements it would not, *inter alia*, copy or use any of LNC's product designs or colorable imitations thereof without LNC's express written permission. After the Distribution Agreements terminated, Jackel copied numerous LNC product designs. On May 24, 2010, LNC filed an action against Jackel in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana for breach of the 2008 Distribution Agreement and for violations of the

Louisiana Unfair Trade Practices and Consumer Protection Law (the State Court Action). Subsequently, the petition in the State Court Action was amended to include a claim for breach of the 2003 Agreement and adding the Jackel Parties on the basis that they operated as a single business enterprise. The State Court Action was tried before a jury who found the Jackel Parties were operating as a single business enterprise, had breached both the 2003 and 2008 Distribution Agreements and violated the Louisiana Unfair Trade Practices and Consumer Protection Law. A final judgment was entered in the State Court Action on May 22, 2013 confirming the jury verdict. Not included in the State Court Action or in the final judgment was the Jackel Parties' copying of the LNC silicone valve that Jackel called its Penguin Valve. In 2014, LNC filed an action for breach of contract and patent infringement in the United States District Court for the Eastern District of Texas against Jackel and MaybornUS based on Jackel's Penguin Valve (the Federal Action). The Parties subsequently entered into the Second Settlement Agreement resolving the Federal Action. The 2013 and 2015 Settlement Agreements did not release future breaches or any of the claims asserted in this action. In 2016, LNC discovered that one or more of the Jackel Parties was selling new products previously unknown to LNC incorporating one or more of LNC's product designs. This action does not include any claims relating to the Penguin Valve. LNC brings this action seeking damages for the Jackel Parties' recent breaches of the 2003 and 2008 Distribution Agreements and for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.

## THE PARTIES

1. Plaintiff Luv n' care, Ltd. is a Louisiana corporation with a principal place of business in Monroe Louisiana.

2. Defendant Jackel International, Ltd. is a corporation organized under the laws of the United Kingdom with a principal place of business at Dudley Lane, West Cramlington, Northumberland NE23 7RH.

3. Defendant Mayborn USA, Inc., upon information and belief, is a corporation organized under the laws of the State of New York with a principal place of business at 1 Edgewater Drive, Suite 109, Norwood, MA 02062.

4. Defendant Jackel China Limited, upon information and belief, is a corporation organized under the laws of the Peoples Republic of China with a principal place of business at 143 Hoi Bun Road, 14/F, China Aerospace Centre, Kwun Tong, Kowloon, Hong Kong.

5. Defendant Mayborn ANZ Pty. Limited, upon information and belief, is a corporation organized under the laws of the Commonwealth of Australia with a principal place of business at U 21 15 Ricketts Road, Mount Waverly, Victoria 3149, Australia.

6. Defendant Product Marketing Mayborn Limited, upon information and belief, is a corporation organized under the laws of the Peoples Republic of China with a principal place of business at 143 Hoi Bun Road, 14/F, China Aerospace Centre, Kwun Tong, Kowloon, Hong Kong.

7. Defendant Mayborn Group Limited, is a corporation organized under the laws of the United Kingdom with a principal place of business at Dudley Lane, West Cramlington, Northumberland NE23 7RH.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

8. This is a civil action based on diversity of citizenship seeking damages for breach of contract and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law.

9. This Court has jurisdiction under 28 U.S.C. § 1332 as the parties are citizens of different states and one or more of the defendants are citizens or subjects of a foreign state. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

10. The Court has personal jurisdiction over the Defendants because (i) the Parties entered into a contract to be performed in whole or in part within the State of Louisiana; (ii) the Jackel Parties have conceded to jurisdiction in Ouachita Parish, Louisiana and this Court; (iii) LNC's claims arise in whole or in part out of the Jackel Parties' purposeful, intentional, regular, systematic and continuous conduct, including the marketing and selling of products that are the subject of this action in Louisiana and (iv) the Jackel Parties have sufficient minimum contacts within this jurisdiction such that exercising personal jurisdiction over them would not offend traditional notions of fair play and substantial justice. The Jackel Parties have agreed to receive service by delivery to Steven W. Parkin, CEO, Jackel International Ltd., via international courier at Dudley Lane, West Cramlington, Northumberland NE23 7RH and may be served thereby under the Louisiana Long Arm Statute.

11. Venue in the Western District of Louisiana is proper under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims occurred within the territory of the Western District of Louisiana. Defendants by agreement have waived any objection to venue in Ouachita Parish, Louisiana.

## FACTS

12. On April 17, 2003, LNC and Jackel entered into a Distribution Agreement were Jackel would be the exclusive distributor of LNC products in the United Kingdom, Ireland and Gibraltar. Subsequently on April 17, 2008, LNC and Jackel entered into a second

Distribution Agreement were Jackel would continue to be the exclusive distributor of LNC products in the United Kingdom, Ireland and Gibraltar. The 2003 and 2008 Distribution Agreements govern the rights and duties of the Parties with respect to the use of LNC's product designs.

13. LNC is a leading designer and seller of innovative, high quality and attractive products for babies and small children.

14. At the time of the 2003 and 2008 Distribution Agreements and for many years preceding those agreements, LNC was a leading designer and seller of innovative, high quality and attractive products for babies and small children.

15. Based on its innovative, high quality and attractive product designs, LNC was then and is now known as one of the leading baby product companies in the world.

16. Based on its innovative, high quality and attractive product designs, LNC's products are among the most popular and well-known products in the baby products industry and those products are famous throughout the United States and worldwide.

17. As a result of LNC's innovative, high quality and attractive product designs, those product designs have all become widely known throughout the United States and worldwide and have become directly associated with LNC as a source of innovative, attractive and high-quality products.

18. During the term of the 2003 and 2008 Distribution Agreements, LNC disclosed and shared with Jackel many of LNC's product designs. The LNC product designs shared with Jackel included, but are not limited to the following: (1) a cup with a soft or silicone top, (2) a cup with a soft or silicone top having a spout, (3) a cup with a sculptured body, (4) a cup with a silicone top having a spout and recessed one piece valve, (5) a gripper cup, (6)

a straw having a valve, (7) a straw having a valve inside the straw, (8) a football helmet flip-it cup with a straw having a valve, (9) a straw cup with a silicone valve, (10) a cup with a top having a silicone insert so part of the top is hard and part is soft, (11) silicone tops having a valve for air replacement, (12) a straw with an air dimple vent, (13) a cup with a soft or silicone top having a spout and compression valve, and (14) the configurations of LNC's products (collectively the LNC Product Designs).

19. Both the 2003 and 2008 Distribution Agreements prohibited Jackel from copying or making colorable imitations of LNC's product designs after those Distribution Agreements expired or terminated.

20. The 2003 Distribution Agreement was terminated on April 16, 2008 when the Parties entered into the 2008 Distribution Agreement.

21. The 2008 Distribution Agreement expired on April 1, 2010.

22. After the 2008 Distribution Agreement terminated, LNC discovered that Jackel had copied one or more of LNC's product designs in violation of the 2003 and 2008 Distribution Agreements.

23. LNC filed the State Court Action on May 24, 2010 in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law. The case was styled *Luv n' care, Ltd. v. Jackel International Limited*, Civil Action No. 2010-1891.

24. On March 11, 2011, LNC amended the petition in the State Court Action to add a claim for breach of the 2003 Distribution Agreement. On February 29, 2012, LNC filed a Second Supplemental and Amended Petition in the State Court Action asserting claims against the Jackel Parties and seeking to have the Jackel Parties declared a single business enterprise.

25. Before trial, LNC discovered that the Jackel Parties had copied one of LNC's silicone valves that the Jackel Parties called their Penguin Valve. LNC requested to have the Penguin Valve added to the State Court Action but that request was denied, and the Jackel Penguin Valve was not part of the trial in the State Court Action.

26. The State Court Action was tried before a jury and a verdict was rendered on February 7, 2013.

27. On May 22, 2013, Judge Daniel J. Ellender entered a judgment "in favor of Plaintiff Luv n' care, Ltd. ("LNC") and against Jackel International Limited ("Jackel") on LNC's claim that Jackel breached the 2003 and 2008 Distribution Agreements with respect to Jackel's (1) soft spout cups; (2) flip-top cup; and (3) straw cup." The Court also entered judgment "in favor of LNC and against Jackel, Product Marketing Mayborn Ltd., Mayborn USA, Inc. on LNC's claim for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"). The Court also entered judgment "in favor of LNC and against Mayborn Group Limited, Product Marketing Mayborn Ltd., Mayborn USA, Inc., Jackel China Limited, and Mayborn ANZ Pty. Ltd. on LNC's claim that the foregoing entities constitute a single business enterprise with Jackel and each of Jackel, Mayborn Group Limited, Product Marketing Mayborn Ltd., Mayborn USA, Inc., Jackel China Limited, and Mayborn ANZ Pty. Ltd. is bound by the terms and provisions of the 2003 and 2008 Distribution Agreements between Jackel and LNC."

28. On May 22, 2013, the State Court entered a Permanent Injunction prohibiting the Jackel Parties from ""selling, offering for sale, advertising, marketing and/or promoting any of the Litigated Products, as well as any further versions thereof or other products that are copies and/or colorable imitations of Plaintiff's silicone compression valve: (1) soft spout

cups. (2) flip-top cups; or (3) straw cups." Attached to the Permanent Injunction as Exhibit A is a photograph depicting each of the Jackel cups that was at issue in the case and actually litigated (the Litigated Products).

29. The Parties appealed the State Court Action but while the appeal was pending, the Parties entered into the First Settlement Agreement. The First Settlement Agreement did not release any of the claims alleged herein and expressly excluded from the release any claims arising out of products other than the Litigated Products.

30. On August 14, 2014, LNC filed the Federal Action against Jackel and MaybornUS alleging breach of contract and patent infringement based on Jackel's and MaybornUS's sale of products with the Penguin Valve.

31. On August 10, 2015, an Order was entered in the Federal Action dismissing LNC's claims for breach of contract based on the Penguin Valve on the basis of *res judicata*.

32. Before the Federal Action was tried, the parties entered into a Second Settlement Agreement on or about December 17, 2015, and the Federal Action was dismissed. The Second Settlement Agreement did release any of the claims alleged herein and expressly excluded from the release any claims arising out of products other than the Penguin Valve.

33. In 2016, LNC discovered that one or more of the Jackel Parties was selling a Transition Cup that included LNC's product design for a soft silicone top with a spout having a compression valve that LNC believed violated the Permanent Injunction entered in the State Court Action.

34. On October 20, 2016, LNC filed in the State Court Action a Motion for Rule to Show Cause Why an Order of Contempt and Damages Should Not be Entered Against Defendants.

35. After a hearing on LNC's motion was conducted on October 5, 2017, Judge Ellender denied the motion finding that the Jackel Transition Cup did not include a compression valve and therefore did not violate the Permanent Injunction.

36. LNC has appealed Judge Ellender's denial of the motion.

37. The Jackel Transition Cup also either copied or adopted colorable imitations of one or more of LNC's Product Designs in addition to the LNC product design for the silicone top with a spout and compression valve. LNC recently discovered that in addition to the Transition Cup, one or more of the Jackel Parties are selling cups and tumblers that have either copied or adopted colorable imitations of one or more of the LNC Product Designs.

38. As presently informed, the products being sold by one or more of the Jackel Parties that include one or more of the LNC Product Designs are the Jackel Transition Cup, the Jackel Straw Tumbler, the Jackel Trainer Straw Cup and the Jackel Insulated Straw Tumbler (collectively the Breaching Products). None of the Breaching Products was included in the Litigated Products that were the subject of the State Court Action. None of the Breaching Products was the subject of the Federal Action. None of the Breaching Products is alleged to violate the 2003 and 2008 Distribution Agreement based on the use of a Penguin Valve. None of the Breaching Products was included in the releases of the First and Second Settlement Agreements.

39. LNC only learned of the Breaching Products after the judgments were entered in the State Court and Federal Action. Prior to LNC's learning about the Breaching Products, LNC was not aware and had no reason to be aware that the Jackel Parties were selling any product that included a copy or colorable imitation of one or more of the LNC Product Designs other than the Litigated Products that were the subject of the State Court Action

and the Jackel Products that included a Penguin Valve. LNC does not contend that the Penguin Valve is included in any claim asserted in this Action.

40. To the extent one or more of the Breaching Products was on offer by the Jackel Parties during the pendency of the State Court or Federal Actions, LNC was not aware of any such offer and information regarding any such offers was withheld from LNC by the Jackel Parties despite the Jackel Parties' duty to disclose that information in both the State Court and Federal Actions.

41. To the extent one or more of the Breaching Products was on offer by the Jackel Parties outside of the territory provided in the 2003 and 2008 Distribution Agreements, namely the UK, Ireland and Gibraltar, during the pendency of the State Court or Federal Actions, LNC was not aware of any such offer and had no reason to believe that the Jackel Parties would be offering such products outside the UK, Ireland and Gibraltar.

42. The Jackel Parties had a duty during the State Court and Federal Actions to disclose all products that they manufactured, offered for sale or sold that included a copy or colorable imitation of an LNC product design. Despite that duty, upon information and belief, the Jackel Parties deliberately and intentionally withheld information from LNC that would have revealed that the Jackel Parties manufactured, offered for sale and sold products that included a copy or colorable imitation of an LNC Product Design.

43. The Jackel Parties intentionally and with willful disregard for LNC's contractual rights in the 2003 and 2008 Distribution Agreements concealed from LNC all facts that would have revealed that the Jackel Parties were making, offering for sale and selling the Breaching Products or any other product that included a copy or colorable imitation of an LNC Product Design.

44. In addition to LNC's product design for a cup with a soft or silicone top having a spout and compression valve, the Jackel Transition Cup includes LNC's product designs directed to (a) a soft or silicone top, (b) a soft or silicone top having a spout, (c) gripper cup and (d) a silicone top having a valve for air replacement. Each of these product designs is one of the LNC Product Designs. The Jackel Transition Cup's incorporation of copies and colorable imitations of one or more of the LNC Product Designs is a breach of the 2003 and 2008 Distribution Agreements.

45. The Jackel Straw Tumbler includes LNC's product designs directed to (a) a straw having a valve, (b) a straw cup with a silicone valve, (c) a silicone top having a valve for air replacement and (d) a straw with an air dimple vent. Each of these product designs is one of the LNC Product Designs. The Jackel Straw Tumbler's incorporation of copies and colorable imitations of one or more of the LNC Product Designs is a breach of the 2003 and 2008 Distribution Agreements.

46. The Jackel Trainer Straw Cup includes LNC's product designs directed to (a) a gripper cup, (b) a straw having a valve, (c) a straw cup with a silicone valve, (d) a silicone top having a valve for air replacement and (e) a straw with an air dimple vent. Each of these product designs is one of the LNC Product Designs. The Jackel Trainer Straw Cup's incorporation of copies and colorable imitations of one or more of the LNC Product Designs is a breach of the 2003 and 2008 Distribution Agreements.

47. The Jackel Insulated Straw Tumbler includes LNC's product designs directed to (a) a straw having a valve, (b) a football helmet flip-it cup with a straw having a valve, (c) a straw cup with a silicone valve, (d) a silicone top having a valve for air replacement and (e) a straw with an air dimple vent. Each of these product designs is one of the LNC Product Designs.

The Jackel Insulated Straw Tumbler's incorporation of copies and colorable imitations of one or more of the LNC Product Designs is a breach of the 2003 and 2008 Distribution Agreements.

48. The Jackel Parties operate as a single business enterprise and therefore are jointly and severally liable for each other's conduct with regard to LNC.

49. Upon information and belief, the Jackel Parties are manufacturing the Breaching Products outside the United States and shipping those Breaching Products worldwide and importing them into the United States including the State of Louisiana. Also, upon information and belief, the Jackel Parties are offering for sale and selling the Breaching Products in the United States, including the State of Louisiana, and throughout the world.

50. The Jackel Parties' manufacture, offer for sale and sale of the Breaching Products is a breach of the 2003 and 2008 Distribution Agreements. That breach is intentional.

51. LNC has been and continues to be damaged by the Jackel Parites' intentional breach of the 2003 and 2008 Distribution Agreements. The Jackel Parties will continue their intentional breach of the 2003 and 2008 Distribution Agreements causing LNC to suffer damages unless the Jackel Parties are enjoined by this Court.

52. The Jackel Parties' manufacture, offer for sale and sale of the Breaching Products that include a copy or colorable imitation of one or more of the LNC Product Designs were and are willful and malicious actions intentionally designed to take unfair advantage of LNC.

53. LNC and the Jackel Parties, operating as a single business enterprise, are engaged in and conduct trade in commerce within the State of Louisiana, throughout the United States and the rest of the world. LNC and the Jackel Parties are competitors and have been competitors since at least the termination of the 2008 Distribution Agreement.

**54.** The Jackel Parties' manufacture, offer for sale and sale of the Breaching Products that include a copy or colorable imitation of one or more of the LNC Product Designs constitute unfair methods of competition and unfair and deceptive acts or practices in the conduct of a trade or in commerce. Those unfair and deceptive acts by the Jackel Parties are willful and made with the intent to deliberately harm LNC's business by diverting to themselves sales that rightfully belong to LNC. The Jackel Parties have profited by their willful and intentional acts and LNC has been so damaged having lost substantial sums as a direct consequence of the Jackel Parties' willful and malicious acts.

## COUNT I – BREACH OF CONTRACT

55. LNC repeats and reallege each and every allegation contained in the preceding and subsequent paragraphs as if fully set forth herein.

56. LNC and Jackel were parties to the 2003 and 2008 Distribution Agreements.

57. Jackel and the remaining Jackel Parties operate as a single business enterprise and are jointly and severally obligated to comply with the terms and conditions of the 2003 and 2008 Distribution Agreements.

58. Both the 2003 and 2008 Distribution Agreements require that the Jackel Parties not copy LNC's product designs or colorable imitations of those LNC product designs.

59. Since 2016, the Jackel Parties have manufactured, offered for sale and sold products – the Breaching Products – that copy one or more of the LNC Product Designs or colorable imitations of those LNC Product Designs.

60. The Jackel Parties have never obtained written permission from LNC to include in the Breaching Products a copy of one or more of the LNC Product Designs, or a colorable imitations of those LNC Product Designs,

61. The Jackel Parties' manufacture, offer for sale and sale of the Breaching Products that copy one or more of the LNC Product Designs, or colorable imitations of those LNC Product Designs, without LNC's authorization constitute a breach of the 2003 and 2008 Distribution Agreements.

62. The Jackel Parties have willfully and deliberately included in the Breaching Products copies of one or more of the LNC Product Designs, or colorable imitations of those LNC Product Designs.

63. The Jackel Parties have willfully and deliberately concealed their actions with respect to the Breaching Products. For example, the Jackel Parties have made and sold Breaching Products that include copies of one or more the LNC Product Designs, or colorable imitations of those LNC Product Designs, under private label hiding from LNC the fact that such Breaching Products originated from the Jackel Prarties.

64. Based on the Jackel Parties responses to discovery requests in the State Court and Federal Actions, LNC had no reason to suspect that the Jackel Parties were making, offering for sale or selling the Breaching Products. LNC had no other reason to know that the Jackel Parties were manufacturing, offer for sale or selling the Breaching Products.

65. LNC has and continues to suffer substantial damages from the Jackel Parties' willful breaches of the 2003 and 2008 Distribution Agreement.

## COUNT II – VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

66. LNC repeats and reallege each and every allegation contained in the preceding and subsequent paragraphs as if fully set forth herein.

67. The Jackel Parties operate as a single business enterprise.

68. The Jackel Parties and LNC are business competitors in the baby products market.

69. LNC is the owner of the LNC Product Designs and various other product designs.
70. The Jackel Parties are prohibited from copying any of LNC's product designs or colorable imitations of any of those product designs.
71. The Jackel Parties have copied one or more of LNC's Product Designs or colorable imitations of those LNC Product Designs and are thereby competing unfairly with LNC in the State of Louisiana, the United States and throughout the rest of the world. Those acts by the Jackel Parties, operating as a single business enterprise, constitute unfair and deceptive practices. The Jackel Parties have willfully and deliberately hidden from LNC their unfair and deceptive practices. For example, the Jackel Parties have made and sold products that include copies of one or more of the LNC Product Designs, or colorable imitations of those LNC Product Designs, under private label hiding from LNC the fact that such products originated from the Jackel Prarties.
72. The Jackel Parties' unfair and deceptive practices are conducted willfully and with the malicious intent to harm LNC's business.
73. LNC has suffered damages to its business as a direct result of the Jackel Parties' unfair and deceptive practices
74. The Jackel Parties will continue their willful and wanton acts of unfair and deceptive practices unless enjoined by this Court.

## REQUEST FOR RELIEF

Wherefore, Plaintiff LNC respectfully requests that the Court grant it relief as follows:

A. Enter a judgment that the Jackel Parties constitute a single business enterprise, that the Jackel Parties' manufacture, offer for sale and sale of the Breaching Products constitute a breach of the 2003 and 2008 Distribution Agreements and further constitute unfair and deceptive trade practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law;

B. Enter an Order enjoining the Jackel Parties from future breaches of the 2003 and 2008 Distribution Agreements and also enjoining the Jackel Parties from further acts of unfair and deceptive trade practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law;

C. Enter an Order awarding LNC its actual damages for the Jackel Parties' breach of the 2003 and 2008 Distribution Agreements and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law s as proven at the trial of this action;

D. Enter an Order awarding LNC its actual attorneys' fees in connection with the Jackel Parties' violations of the Louisiana Unfair Trade Practices and Consumer Protection Law;

E. Enter an Order awarding LNC its costs and its disbursements in this action, including its reasonable attorneys' fees; and

F. All other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiffs Admar and LNC demand trial by jury in this action of all issues so triable.

Respectfully submitted this 17th day of September 2018.

*/s/Robert M. Chiaviello, Jr.*
**Robert M. Chiaviello, Jr.** (La. Bar No. 37370)
**NUBYLAW**
3030 Aurora Avenue, 2nd Floor
Monroe, Louisiana 71201
Telephone: (318) 410-4012
Facsimile: (318) 388-5892
Email: bobc@nuby.com

**Joseph D. Guerriero** (La. Bar No. 06391)
**NUBYLAW**
3030 Aurora Avenue, 2nd Floor
Monroe, Louisiana 71201
Telephone: (318) 338-3603
Facsimile: (318) 388-5892
Email: joed@nuby.com

*Attorneys for Luv n' care, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September 2018, I served a copy of the foregoing document by electronic mail upon the following counsel for Defendants Jackel International, Ltd., et al. at the identified email addresses:

Jackel International, Ltd., et al.
Through their attorneys of record:

Thomas M. Hayes, III
Tom@HHSCLAW.com
**HAYES, HARKEY, SMITH & CASCIO, L.L.P.**

John S. Goetz
goetz@fr.com
Matthew A. Colvin
colvin@fr.com
**FISH & RICHARDSON**

/s/ Robert M. Chiaviello, Jrl
Robert M. Chiaviello, Jr.