UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 3:18-CV-00534 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JACKEL INTERNATIONAL LTD., ET AL., | MAG. JUDGE PEREZ-MONTES |

### RULING

Pending before the Court is Defendants Mayborn Group Limited, Jackel International Limited[1], Mayborn USA, Inc., Jackel China, Ltd., Mayborn Anz Pty, Ltd., and Product Marketing Mayborn, Ltd.'s (collectively "Defendants") "Motion to Dismiss for Failure to State a Claim" [Doc. No. 111]. Plaintiff Luv n' care, Ltd. ("LNC" or "Plaintiff") responded to the motion. [Doc. No. 134]. Defendants filed a reply. [Doc. No. 144]. For the following reasons, the motion is DENIED.

Also pending before the Court is Plaintiff's "Cross Motion for Partial Summary Judgment" [Doc. No. 130]. Defendants responded to the motion. [Doc. No. 142]. Plaintiff filed a reply. [Doc. No. 145]. For the following reasons, the motion is GRANTED IN PART and determined to be MOOT as it relates to the Louisiana Unfair Trade Practices Act claims.

I.     ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiff LNC is a Louisiana corporation with its place of business in Monroe, Louisiana. Plaintiff designs, manufactures, and sells baby products under the "Nuby" brand name. Defendants are also in the business of designing, manufacturing, marketing, and selling baby products. Defendants sell their own products under the brand name Tommee Tippee.

---

[1] The record before the Court indicates that Jackel International Limited has changed its name to Mayborn (UK) Limited. A Motion to Change Case Caption [Doc. No. 117] is pending.

### A. The 2003 and 2008 Agreements

At issue for both motions are two distribution agreements that were executed in 2003 and 2008.  Under the agreements, Defendants were Plaintiff's exclusive distributor of baby products in certain international territories.  The first agreement was executed on April 17, 2003 (the "2003 Agreement"), and granted Defendants the exclusive right to use LNC's Nuby trademark and sell Nuby-branded products in certain countries. [Doc. No. 1-5].  The second agreement was executed on April 17, 2008 ("the 2008 Agreement"), and was terminated on February 21, 2010. [Doc. No. 1-6].  Defendants contend that the 2003 Agreement "was canceled and superseded by [the] second agreement in 2008." [Doc. No. 111-1 at 4].  Plaintiff contends that "[t]he 2008 agreement simply followed in succession to the 2003 Agreement without replacing that agreement." [Doc. No. 134 at 11] (internal quotations omitted).  The parties dispute what rights, liabilities, and obligations expressly survive both distribution agreements.

### B. The Previous Litigation

On May 24, 2010, Plaintiff brought suit against Defendants in state court alleging breach of the 2008 Agreement  by selling certain soft-spout, flip-top, and straw cups with a silicone compression valve ("*LNC I*" or "State Court Action").  Defendants denied copying or using Plaintiff's product designs, and filed reconventional demands seeking a declaratory judgment that the 2003 and 2008 Agreements were unenforceable. [Doc. No.134-3 at ¶130].  That case went to trial, and the jury found in favor of Plaintiff and against Defendants on Plaintiff's claims of breach of the distribution agreements and the Louisiana Unfair Trade Practices Act ("LUTPA").

A judgment was entered on May 22, 2013, which provided that Defendants breached the 2003 or 2008 distribution  agreements "with respect to Jackel's (1) soft spout cups; (2) flip-top cup; and (3) straw cup." [Doc. No. 63-2 at 1].  More specifically, the judgment found that Defendants breached the 2003 or 2008 distribution agreements with regard to the "Litigated

Products" identified in Exhibit A to the Judgment: (1) First Cup; (2) Kids on the Go Active Cup; (3) Tip It Up Cup; (4) Tip It Up Trainer Cup; (5) Tip It Up Beaker Cup; (6) Tip It Up Sportster Cup; and (7) Tip It Up Flip Top Cup. *Id.* at 3. The jury also found (and the court concluded) that (1) Defendant and its affiliates are a single business entity bound by the terms of both distribution agreements; (2) both distribution agreements are valid and not void as against public policy; and (3) Defendant violated the LUTPA. [Doc. No. 63-1 at 118-122; Doc. No. 63-2 at 1-3].

Following the jury verdict, the state court entered a permanent injunction enjoining Defendants from selling any of the Litigated Products "as well as any further versions thereof" or other non-litigated products not in existence at the commencement of the January 2013 trial that are copies and/or colorable imitations of LNC's silicone compression valve, i.e., "(1) soft spout cups; (2) flip-top cups; or (3) straw cups." [Doc. No. 63-2 at 4-6]. On May 3, 2013, before the entry of final judgement in *LNC I,* Plaintiff filed a second state court action ("*LNC II*") in which LNC alleged that Defendants' sales of "additional products" also breached the same agreements and violated LUTPA. [Doc. No. 28-6]. Defendants removed that lawsuit to federal court. Plaintiff voluntarily dismissed *LNC II* on August 27, 2013.

Although all parties appealed the judgment in *LNC I*, the appeal was settled and dismissed on November 21, 2013.

On August 14, 2014, Plaintiff filed a third action ("*LNC III*") against Defendants. In that lawsuit, Plaintiff focused on the "additional products" from *LNC II* and added patent infringement claims and LUTPA claims. The district court dismissed Plaintiff's breach of the distribution agreements and the LUTPA claims as barred by *res judicata*. The patent case settled, and the *res judicata* decision was never appealed. A final judgement in *LNC III* issued on December 18, 2015.

On March 23, 2018, Plaintiff filed suit against Defendants in the Fourth Judicial District

3

Court, Ouachita Parish, Louisiana, and the case was removed to this Court shortly thereafter. The "Alleged Products" at issue in this case are (1) the Insulated Straw Tumbler; (2) the Trainer Straw Cup; (3) the Tuff Stuff Straw Tumbler; and (4) the Transition Cup. [Doc. No. 78 at ¶38]. Plaintiff contends that in marketing and selling the Alleged Products, Defendants have willfully and intentionally improperly used Plaintiff's products, product designs, and non-confidential proprietary information to market and sell competing products without Plaintiff's consent and without paying the perpetually owed royalty. [Doc. No. 134 at 17-18].

In response to the Complaint, Defendants moved for sanctions and, upon the filing of Plaintiff's proposed Amended Complaint, sought sanctions in a second motion. [Doc. Nos. 28, 47]. On December 5, 2018, the Court held an evidentiary hearing on Defendants' sanctions motions. The hearing focused on the 2003 and 2008 Agreements, the State Court Action Judgment and Permanent Injunction, the First Settlement Agreement which was limited to the seven Litigated Products, the four Breaching Products, and various product designs contained in LNC's Nuby and *Natural Touch* branded products. On March 14, 2019, the Court denied both sanctions motions and granted Plaintiff leave to amend the Complaint. [Doc. Nos. 76, 77]. Plaintiff filed an Amended Complaint on that same day. [Doc. No. 78].

The present Motion to Dismiss was filed on March 24, 2020, and the Cross Motion for Partial Summary Judgement was filed on May 15, 2020.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted." The question resolved on a motion to dismiss for a failure to state a claim is not whether the plaintiff will ultimately prevail, "but whether [the] complaint was sufficient to cross the federal court's threshold."

4

*Skinner v. Switzer*, 562 U.S. 521, 530 (2011). A plaintiff is generally required to provide "only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [the plaintiff's] legal argument." *Id.* "The 'short and plain' statement does 'not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Id.* (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014)).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). As such, courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences . . . ." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

After drawing every reasonable inference in favor of the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (citing *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012)). "Asking for plausible grounds *does not* impose a probability requirement at the pleading stage . . . ." *Twombly*, 550 U.S. at 548 (emphasis added). Nor does the plausibility standard authorize courts "to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)).

Instead, the plausibility standard is met when the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Twombly*, 550 U.S. at 556; *accord id.* at 559 (explaining that claims should only be dismissed at the pleading stage when there is "no 'reasonably founded hope that the [discovery]

process will reveal relevant evidence'" (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005))); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged.") (quoting *Twombly*, 550 U.S. at 556)).

Thus, particularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) ("The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). In evaluating a motion to dismiss, " [t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### a. The Parties' Position

Defendants argue that Plaintiff's claims grounded in breach of the 2003 Agreement are implausible because the 2003 Agreement terminated when the 2008 Agreement began. [Doc. No. 111-1 at 9]. According to Defendants, the 2003 Agreement was canceled and superseded by the subsequent 2008 Agreement with no surviving provisions. *Id.* Defendants contend that

6

nothing in the 2003 Agreement was "incorporated" into the 2008 Agreement, and, therefore, nothing in the 2003 Agreement survived. *Id.* Defendants further argue that activities conducted after the "extinguishment" of the 2003 Agreement cannot be breaches of the 2003 Agreement. *Id.* at 10. Defendants move the Court to dismiss the 2003 Agreement from this case along with each of Plaintiff's accusations or claims relating to the 2003 Agreement. *Id.*

Defendants also argue that Plaintiff's breach of contract claims are not plausible because they are premised on information disclosed to Defendants before the effective term of the 2008 Agreement, and are, therefore, not covered by that agreement. *Id.* Defendants argue that Paragraph 19 of the 2008 Agreement requires that "proprietary designs or information" be obtained during the term of the 2008 Agreement. *Id.* at 12. Defendants contend that the 2008 Agreement was fully executed on April 17, 2008, and terminated on February 21, 2010. *Id.* According to Defendants, the "LNC product designs" disclosed to it during the 2003 Agreement are not covered by the 2008 Agreement. *Id.* at 13. Defendants argue that this indicates that Plaintiff's claims are not plausible. *Id.* In summary, Defendants contend that by alleging breach of both the 2003 and 2008 Agreements, there is actually no breach of either agreement. *Id.* at 14.

Regarding the LUTPA claims, Defendants argue that the allegations mirror the breach allegations and are implausible for the same reasons. *Id.* Defendants also contend that the LUTPA allegations should be dismissed for failure to state a claim because they fail to plead anything beyond breach of contract. *Id.* at 15-16.

Plaintiff responds that the Amended Complaint contains sufficient factual allegations, which, accepted as true, state claims for relief that are plausible on their face. [Doc. No. 134 at 20-22]. Plaintiff also argues that Defendants improperly rely upon an affirmative defense not found on the face of the Amended Complaint. *Id.* at 22. Plaintiff contends that Defendants

7

improperly conclude that the 2003 Agreement is "no longer binding upon either party" and that "nothing in the 2003 Agreement survived." *Id.* at 23. Plaintiff also argues that Defendants consented to enlarge the allegations in the Amended Complaint with the evidence Plaintiff introduced, without objection, at the sanctions hearing. *Id.* at 24-25.

Plaintiff further contends that the Court should consider documents referenced in and integral to the Amended Complaint, and take judicial notice of other relevant documents. *Id.* at 25-27. Plaintiff argues that Defendants have judicially admitted the 2003 Agreement was not extinguished or rendered null and void. *Id.* at 27-30. Plaintiff further contends that its Amended Complaint does not admit what Defendants claim it admits. *Id.* at 30-32. Plaintiff also argues that Defendants are also collaterally estopped from arguing LUTPA does not provide a valid theory of liability. *Id.* at 37-38.

Defendants reply that it is apparent that LNC's claims as to breach of contract and LUTPA are implausible on their face. [Doc. No. 144 at 7]. Defendants further contend that the underlying substance and supporting argument in the Motion to Dismiss come directly from the Amended Complaint. *Id.* Defendants also argue that Plaintiff cannot save its deficient pleadings by enlarging it with evidence from the sanctions hearing. *Id.* Similarly, Defendants contend that Plaintiff cannot use judicial notice of extrinsic evidence to supplement its Amended Complaint. *Id.* at 8-10. Defendants also contend that Plaintiff's collateral estoppel and judicial admission arguments fail. *Id.* at 10-11.

Defendants further argue that the Court should find the 2003 Agreement canceled and superseded by the 2008 Agreement according to the plain words of the agreements. *Id.* at 11-16. According to Defendants, Plaintiff's claim for breach of that agreement must be dismissed. *Id.* at 16. Defendants also contend that the 2008 Agreement does not protect information obtained prior to its term and cannot save the complaint from dismissal. *Id.* at 17-18. Defendants

8

argue that Plaintiff has not identified where in its pleading that it alleges a plausible breach of the 2008 Agreement alone using designs Defendants obtained during the term of the 2008 Agreement. *Id.* at 18. Defendants further contends that Plaintiff's decision to plead breach of both agreements by the same set of facts is fatal to its claims. *Id.* at 19-20. Defendants argue that Rule 15(b) cannot save Plaintiff's 2008 Agreement breach claims. *Id.* at 20-22. Finally, Defendants further argue that Plaintiff is wrong on the substantive matters concerning its LUTPA claim. *Id.* at 22-24.

### b. Analysis

The Court finds that Plaintiff has set forth facts, which, accepted as true, state claims for relief under the distribution agreements and the LUTPA that are plausible on their face. Specifically, the Amended Complaint includes the following introductory paragraph, which alleges that Plaintiff and Defendants executed two contracts providing that Defendants could not copy or use Plaintiff's product designs without consent, and that Defendants have breached the contracts by using Plaintiff's information and copying product designs without Plaintiff's permission:

> This is a complaint for breach of contract and violation of the [LUTPA]. Plaintiff [LNC] entered into Distribution Agreements with Defendant [Jackel], on April 17, 2003 and April 17, 2008 *** Pursuant to the terms and conditions of the 2003 and 2008 Distribution Agreements, and in consideration for Jackel becoming the exclusive distributor for LNC in the UK, Ireland and Gibraltar, Jackel agreed that after the expiration of the Distribution Agreements it would not, inter alia, copy or use any of LNC's product designs or colorable imitations thereof without LNC's express written permission. After the Distribution Agreements terminated, Jackel copied numerous LNC product designs. On May 24, 2010, LNC filed an action against Jackel in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana for breach of the 2008 Distribution Agreement and for violations of [LUTPA] (the State Court Action). Subsequently, the petition in the State Court Action was amended to include a claim for breach of the 2003 Agreement and adding the Jackel Parties on the basis that they operated as a single business enterprise. The State Court Action was tried before a jury who found the Jackel Parties were operating as a single business enterprise, had breached both the 2003 and 2008 Distribution Agreements and violated [LUTPA]. A final judgment was

> entered in the State Court Action on May 22, 2013 confirming the jury verdict. *** In 2016, LNC discovered that one or more of the Jackel Parties was selling new products previously unknown to LNC incorporating one or more of LNC's product designs. *** LNC brings this action seeking damages for the Jackel Parties' recent breaches of the 2003 and 2008 Distribution Agreements and for violation of [LUTPA]

[Doc. No. 78 at 1-2]. The numbered paragraphs expand upon these allegations:

- ¶¶ 1-7 identify each defendant;

- ¶¶ 8-11 describe the nature of the action, jurisdiction, and venue;

- ¶¶ 12, 19-21 identify and describe the terms of the distribution agreements;

- ¶ 18 alleges LNC disclosed its product designs to Defendants during the collective term of the distribution agreements;

- ¶¶ 23-36 describe the State Court Action (and other litigation between LNC and Defendants) and quote the language from the judgments therein;

- ¶¶ 37-54 detail the violations of the distribution agreements related to the Breaching Products, when LNC learned of the violations, Jackel's alleged concealment of facts, the product designs copied by Jackel in each of the Breaching Products, Defendants' solidary liability as a single business enterprise, and the intentional nature of the breaches;

- ¶¶ 55-65 name and describe Count 1 – Breach of Contract; and

- ¶¶ 66-74 name and describe Count II – Violation of LUTPA

*Id.* at 2-15. The Court finds that Plaintiff's allegations are sufficient to state a claim to relief that is plausible on its face. As discussed above, Plaintiff's complaint in this case details claims for relief under the distribution agreements and the LUTPA. *See, e.g., USI Ins. Servs., LLC v. Matthews*, No. 19-9340, 2019 U.S. Dist. LEXIS 171936, at *6-8 (E.D. La. Oct. 3, 2019) (holding plaintiff's allegations supporting claim for breach of contract were sufficient where complaint detailed a defendant's obligations under the contract and alleged defendant's actions violated the contract and the impact of those violations); *see also id.* (holding plaintiff's allegation that defendants "'knowingly used unfair methods of competition and deceptive acts, including the

misrepresentations, deceptive acts, and improper use' of Plaintiff's confidential information" was sufficient to state a LUTPA claim).

Assuming these well-pleaded facts as true, and viewing them in the light most favorable to the plaintiff, the Court finds that Plaintiff has adequately stated claims for relief under 12(b)(6). Defendants' fatal flaw is that they ignore the very principles underlying a motion to dismiss, namely that the complaint must be construed in a light most favorable to the plaintiff. *See, e.g.*, *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff."). Accordingly, Defendants' "Motion to Dismiss for Failure to State a Claim" [Doc. No. 111] is DENIED.

### B. Cross Motion for Partial Summary Judgment

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c)(2). The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury. . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). Likewise, the Court may not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150.

"Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1302 (Fed. Cir. 2010). "[A] dispute about a material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.*

However, the existence of a factual dispute alone does not defeat a properly supported motion for summary judgment, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### a. The Parties' Position

Plaintiff moves for partial summary judgment arguing that it is entitled to judgment as a matter of law for the following three declarations:

1) The 2008 Agreement did not cancel and supersede the 2003 Agreement, and expressly surviving rights, obligations and liabilities resulting from the 2003 Agreement are not "extinguished," "released" or "discharged" by the 2008 Agreement.

2) The 2008 Agreement prohibits Jackel from using LNC's confidential and nonconfidential proprietary information that it obtained during the term of the 2003 Agreement.

3) LNC is entitled to pursue its claims under the Louisiana Unfair Trade Practices Act.

Regarding Plaintiff's first declaration, Plaintiff contends that Defendants previously judicially admitted that the 2008 Agreement did not replace the 2003 Agreement, and that Defendants affirmatively argued that the Court should look to and apply the terms and conditions of the 2003 Agreement. [Doc. No. 130-1 at 5]. Plaintiff also argues that Defendants are collaterally estopped from asserting that the 2008 Agreement cancels and supersedes the 2003 Agreement because they raised this very argument in the State Court Action and it was rejected. *Id.* at 6. Plaintiff further argues that numerous principles of contract interpretation preclude a finding under Louisiana law that the 2008 Agreement cancels and supersedes the 2003 Agreement. *Id.*

Regarding Plaintiff's second declaration, Plaintiff contends that the Court does not need to reach the "entire agreement" provision in Paragraph 26 of the 2008 Agreement because Paragraph 19 explicitly states: "Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party." *Id.* at 6 (citing Doc. No. 63-1 at 48). Plaintiff argues that Paragraph 19 prohibits Defendants from using confidential and non-confidential proprietary information that it expressly acknowledged it had received from Plaintiff before the execution of the 2008 Agreement (*i.e.,* during the 2003 Agreement). *Id.*

Regarding Plaintiff's third declaration, Plaintiff argues that Defendants advanced the same claim in the State Court Action and are collaterally estopped from re-litigating whether Plaintiff can bring a LUTPA claim in addition to a breach-of-contract claim. *Id.* at 7. Finally, Plaintiff argues that Louisiana and Fifth Circuit law permit a LUTPA claim based on the alleged facts. *Id.*

Defendants respond that if the Court declines to grant its motion to dismiss, Defendants agree that it is appropriate to render judgment on the questions posed by Plaintiff's requested

declarations. [Doc. No. 142 at 5, 7, 8]. Defendants argue that it has never judicially admitted the surviving obligations in the 2003 Agreement are still in force. *Id.* at 10-13. Defendants further argue that collateral estoppel does not apply because this issue was not actually litigated in *LNC I*. *Id.* at 14-16. Defendants also contend that the Court should hold that the 2008 Agreement fails to protect information obtained outside its term as a matter of law. *Id.* at 16-18. Finally, Defendants argue that collateral estoppel does not apply here to bar a challenge to LUTPA. *Id.* at 18-19.

Plaintiff replies that Defendants' attempts to distance themselves from their prior admissions ring hollow. [Doc. No. 145 at 1-3]. Plaintiff also argues that the "actually litigated" element of collateral estoppel does not depend on factual findings, and that Defendants do not explain how the State Court Action could have proceeded to the jury and to judgment without a rejection of their argument that the 2008 Agreement cancelled and superseded the 2003 Agreement. *Id.* at 3. Plaintiff further contends that Defendants' argument that the 2008 Agreement cancels and supersedes the 2003 Agreement fails as a matter of contract interpretation. *Id.* at 4-6. Plaintiff argues that Defendants have not established that a generic integration clause can extinguish rights that expressly survived the termination of a former contract between the parties. *Id.* at 6-8. Finally, Plaintiff contends that Defendants misunderstand its argument regarding its LUTPA claim. *Id.* at 8. Plaintiff argues that it is not contending that collateral estoppel precludes Defendants from challenging the merits of the LUTPA. *Id.* Instead, Plaintiff contends that Defendants are collaterally estopped from arguing that as a matter of law, the LUTPA claim cannot proceed. *Id.*

### b. Analysis

As it relates to the dispute regarding the 2003 and 2008 Agreements, the parties correctly state and agree that the Court may interpret a contract and resolve related legal issues at summary

judgment. *See, e.g., Glassell Non-Operated Interests, Ltd. v. EnerQuest Oil & Gas, L.L.C.*, 927 F.3d 303 (5th Cir. 2019) (determining that a party did not breach an agreement). Indeed, Defendants argue that "[t]he relevant facts are the words the agreements use. There is no dispute about the words. The dispute is about what the words mean, but that is a legal issue for the Court to decide." [Doc. No. 142 at 8]. Thus, the Court turns to the language of the 2003 and 2008 Agreements.

The 2003 Agreement included the following provisions related to the present motion. Specifically, Paragraph 21 of the 2003 Agreement states the following:

> Use of Confidential Information: During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, Products design, patents, drawings, business plans, prototypes, procedures, and methods any other proprietary designs or information of the other party without the written consent of the other party. Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. Distributor agrees not to use in any fashion said information or designs, or any colorable imitations thereof, upon termination of this Agreement. Any use by Distributor of said property without LNC's written consent will convey royalty and commission rights upon LNC at a rate not less than those set herein, without waiving any other remedies available to LNC. Furthermore, Distributor shall keep confidential all terms and conditions created by this Agreement from any third party.

[Doc. No. 1-5 at ¶21]. Paragraph 20(b) of the 2003 Agreement states the following:

> Termination of this Agreement shall not release either party hereto from any liability which at the time of termination has already accrued to the other party hereto or which thereafter may accrue in respect to any act of omission prior to such termination. …

[Doc. No. 1-5 at ¶20(b)]. Finally, Paragraph 28 of the 2003 Agreement states the following:

> Entire Agreement: This Agreement contains the entire and only agreement between the parties hereto and cancels and supersedes all pre-existing proposals, agreements, and/or understandings between the parties respecting the subjected matter hereof, and any representation, promise, or condition in connection therewith not incorporated herein is canceled and shall not be binding upon either party. This Agreement may not be released, discharged, abandoned, changed,

> modified, amended, or renewed in any manner, except by written agreement signed by both parties.

[Doc. No. 1-5 at ¶28].

The 2008 Agreement included the following provisions related to the present motions. Specifically, Paragraph 19 of the 2008 Agreement states the following:

> **Use of Confidential Information**
> During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, drawings, business plans, prototypes, procedures, and methods any other proprietary designs or information of LNC without the written consent of the other party. Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. During the term of this Agreement and continuing after the expiration or termination hereof, Distributor agrees not to use in any fashion said information or designs, or any colorable imitations thereof. Any use by Distributor of said information or property without LNC's written consent will convey royalty and commission rights upon LNC at a rate not less than those set herein, without waiving and specifically reserving to LNC any other remedies available to LNC. Furthermore, Distributor shall keep confidential all terms and rights created by this Agreement from any third party.

[Doc. No. 1-6 at ¶19]. Paragraph 18(C) of the 2008 Agreement states the following:

> Termination of this Agreement shall not release either party hereto from any liability which at the time of termination has already accrued to the other party hereto or which thereafter may accrue in respect to any act or omission prior to such termination. …

*Id.* at ¶18(C). Finally, Paragraph 26 of the 2008 Agreement states the following:

> **Entire Agreement**
> This Agreement contains the entire and only agreement between the parties hereto and cancels and supersedes all pre-existing proposals, agreements, and/or understandings between the parties respecting the subjected matter hereof, and any representation, promise, or condition in connection therewith not incorporated herein is canceled and shall not be binding upon either party. This Agreement may not be released, discharged, abandoned, changed, modified, amended, or renewed in any manner, except by written agreement signed by both parties.

*Id.* at ¶26.

The Court finds that Defendants' argument that the 2008 Agreement released it from

liabilities and obligations in the 2003 Agreement ignores several important provisions in the 2003 Agreement. Specifically, Paragraph 21 of the 2003 Agreement expressly states that "[d]uring the term of this Agreement *and continuing after the expiration or termination hereof*, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement and it conveys perpetual royalty rights . . ." [Doc. No. 1-5 at ¶21] (emphasis added)

Moreover, Paragraph 20, titled "Termination," states that "[t]ermination of this Agreement shall not release either party hereto from any liability which at the time of termination has already accrued to the other party hereto or which thereafter may accrue in respect to any act of omission prior to such termination." [Doc. No. 1-5 at ¶20(b)]. The words "cancels and supersedes" in Paragraph 26 of the 2008 Agreement did not clearly and unequivocally "release" Defendants from expressly reserved liabilities under the 2003 Agreement. *See Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 207 (1991) ("[C]ontractual obligations will cease, in the ordinary course, upon termination of the [contract] … Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement."). Therefore, the expressly reserved liability under the 2003 Agreement survived the termination of the 2003 Agreement.

In arguing that the 2003 Agreement was canceled and superseded by the subsequent 2008 Agreement, Defendants contend that nothing in the 2003 Agreement was "incorporated" into the 2008 Agreement, and, therefore, nothing in the 2003 Agreement survived, including the rights and obligations addressed in Paragraphs 20 and 21. [Doc. No. 111-1 at 9]. According to Defendants, activities conducted after the "extinguishment" of the 2003 Agreement cannot be breaches of the 2003 Agreement. *Id.* at 10. The Court disagrees and finds that the expressly reserved liability provided in the 2003 Agreement was not extinguished by the 2008 Agreement.

To be clear, Defendants essentially contend that the 2008 Agreement is a novation of the 2003 Agreement. Novation is "the extinguishment of an existing obligation by the substitution of a new one." Louisiana Civil Code article 1879. Exactly like the facts in *Langhoff Properties, LLC v. BP Products North America Inc.*, 519 F.3d 256 (5th Cir. 2008), the Court finds that the 2008 Agreement was "a new obligation, intended to govern the parties' rights and duties going forward, and not affecting any prior obligations between these parties." *Id.* at 261. In other words, the 2008 Agreement did not release expressly surviving liabilities owed under the 2003 Agreement.

Louisiana law is clear that "[t]he intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed." *Id.* at 262 (citing La. C.C. art. 1880). Moreover, novation must be proved by the party insisting that it has occurred. *Id.* Had Defendants intended to extinguish the 2003 Agreement, or obtain a release from liabilities arising under it, they should have expressly stated that was the parties' intent. They did not do so.

Like the integration or merger clause at issue in *Langhoff*, which also referred to prior/pre-existing "agreements," the integration clause in Paragraph 26 of the 2008 Agreement does not express a clear and unequivocal intent to extinguish these surviving obligations. Indeed, the Fifth Circuit held in *Langhoff* that the Star Lease did not novate the Amoco Lease, but rather was a new agreement "with all rights and duties of the parties thereto *on a going-forward basis only*" and "not affecting any prior obligations between these parties." *Id.* at 261, 263 (emphasis added).

Defendants claim the phrase "not incorporated herein" proves their point that all surviving obligations were extinguished. [Doc. No. 144 at 15]. But that phrase refers nonspecifically to "any representation, promise, or condition," thus confirming that Paragraph

26 only does exactly what integration or mergers clauses are "widely recognized" to do, which is to "'merge' all earlier negotiations and communications that led up to the confection and execution of the new [contract] into the four corners of the agreement." *Langhoff,* 519 F.3d at 262. If Defendants intended to "extinguish" obligations or "release" liabilities, they should have used those terms, which they did not do.

In summary, Defendants' interpretation of the merger clause "conflicts directly with a vast body of commercial contract law, both in Louisiana and elsewhere." *Id.* Moreover, "[i]t is in no way probative of the parties' intent concerning a novation and should [not enter] into the district court's contract construction calculus." *Id.* Accordingly, the Court finds that Defendants failed to meet its Civil Code imposed burden of proving "clear and unequivocal" intention to novate. The Court grants Plaintiff's motion for summary judgment and finds that the 2008 Agreement did not extinguish, release, or discharge Defendants' obligation, rights, and duties regarding LNC's "confidential and nonconfidential proprietary information" obtained during the term of the 2003 Agreement.

Regarding the LUTPA claim, Plaintiff argues that Defendants misunderstand its argument regarding its LUTPA claim. [Doc. No. 145 at 8]. Plaintiff contends that it is not arguing that collateral estoppel precludes Defendants from challenging the merits of the LUTPA. *Id.* Instead, Plaintiff argues that it is entitled to pursue its claims under the LUTPA. Defendants argue that the LUTPA allegations should be dismissed for failure to state a claim because they fail to plead anything beyond breach of contract. [Doc. No. 111-1 at 15-16]. For the reasons discussed above, the Court finds that Defendants' motion to dismiss the LUTPA should be denied. Having made this determination, the Court finds Plaintiff's motion to pursue its claims under the LUTPA is MOOT.

### III. CONCLUSION

For the foregoing reasons, Defendants' "Motion to Dismiss for Failure to State a Claim" [Doc. No. 111] is DENIED. Plaintiff's "Cross Motion for Partial Summary Judgment" [Doc. No. 130] is GRANTED IN PART and determined to be MOOT as it relates to the LUTPA claims.

MONROE, LOUISIANA, this 23rd day of November, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE