UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 3:18-CV-00534 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JACKEL INTERNATIONL LTD., N/K/A MAYBORN (UK) LTD., et al. | MAG. JUDGE PEREZ-MONTES |

<u>**RULING**</u>

Pending before the Court is Plaintiff Luv n' care, Ltd.'s ("LNC") Motion for Partial Summary Judgment Dismissing the Defendants' Counterclaim [Doc. No. 210]. Defendant Mayborn Group Limited, Jackel International Limited, Mayborn USA, Inc., Jackel China, Ltd., Mayborn Anz Pty, Ltd., and Product Marketing Mayborn, Ltd (collectively "Mayborn") responded to the motion. [Doc. No. 230]. LNC filed a reply. [Doc. No. 250]. For the following reasons, the motion is DENIED.

Also pending before the Court is Mayborn's Motion for Relief Pursuant to Rule 56(d) [Doc. No. 231]. LNC responded to the motion. [Doc. No. 236]. Mayborn filed a reply. [Doc. No. 253]. For the following reasons, the motion is GRANTED.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

LNC is a Louisiana corporation with its place of business in Monroe, Louisiana. LNC designs, manufactures, and sells baby products under the "Nuby" brand name. Mayborn is also in the business of designing, manufacturing, marketing, and selling baby products. Mayborn sells its own products under the brand name Tommee Tippee. At issue are two distribution agreements, executed in 2003 and 2008.

### A. The Previous Litigation

In May 24, 2010, LNC brought suit against Mayborn in state court alleging breach of the 2008 Agreement by selling certain soft-spout, flip-top, and straw cups with a silicone compression valve ("*LNC I*"). Mayborn denied copying or using LNC's product designs, and filed reconventional demands seeking a declaratory judgment that the 2003 and 2008 Agreements were unenforceable. [Doc. No.134-3 at ¶130].[1] *LNC I* went to trial, and the jury found in favor of LNC and against Mayborn on LNC's claims of breach of the distribution agreements and the Louisiana Unfair Trade Practices Act ("LUTPA").

A judgment was entered on May 22, 2013, which provided that Mayborn breached the 2003 or 2008 distribution agreements "with respect to Jackel's (1) soft spout cups; (2) flip-top cup; and (3) straw cup." [Doc. No. 63-2 at 1]. More specifically, the "Litigated Products" identified in Exhibit A to the Judgment: (1) First Cup; (2) Kids on the Go Active Cup; (3) Tip It Up Cup; (4) Tip It Up Trainer Cup; (5) Tip It Up Beaker Cup; (6) Tip It Up Sportster Cup; and (7) Tip It Up Flip Top Cup.

**EXHIBIT A - Litigated Products**

| FIRST CUP | KIDS ON THE GO ACTIVE | TIP IT UP CUP | TIP IT UP TRAINER CUP | TIP IT UP BEAKER | TIP IT UP SPORTSTER | TIP IT UP FLIP TOP |
|---|---|---|---|---|---|---|

---

[1] Citations to the parties' filings are to the filing's number in the docket (Doc. No.) and pin cites are to the page numbers assigned through ECF.

*Id.* at 3. The jury also found (and the court concluded) that (1) Defendant and its affiliates are a single business entity bound by the terms of both distribution agreements; (2) both distribution agreements are valid and not void as against public policy; and (3) Defendant violated the LUTPA. [Doc. No. 63-1 at 118-122; Doc. No. 63-2 at 1-3].

Following the jury verdict, the state court entered a permanent injunction enjoining Mayborn from selling any of the Litigated Products "as well as any further versions thereof" or other non-litigated products not in existence at the commencement of the January 2013 trial that are copies and/or colorable imitations of "Plaintiff's silicone compression valve: (1) soft spout cups; (2) flip-top cups; or (3) straw cups." [Doc. No. 63-2 at 4]. On May 3, 2013, before the entry of final judgement in *LNC I,* LNC filed a second state court action ("*LNC II*") in the 4th Judicial District Court for the Parish of Ouachita, alleging that Mayborn's sales of "additional products" also breached the same agreements and violated LUTPA. [Doc. No. 28-6]. Mayborn removed that lawsuit to federal court. LNC voluntarily dismissed *LNC II* on August 27, 2013.

Although all parties appealed the judgment in *LNC I*, the appeal was settled and dismissed on November 21, 2013. On August 14, 2014, LNC filed a third action ("*LNC III*") in the Eastern District of Texas against Mayborn. In that lawsuit, LNC focused on the "additional products" from *LNC II* and added patent infringement claims and LUTPA claims. The district court dismissed LNC's breach of the distribution agreements and the LUTPA claims as barred by *res judicata*. The patent case settled, and the *res judicata* decision was never appealed. A final judgement in *LNC III* issued on December 18, 2015, and *LNC II* and *LNC III* were dismissed with prejudice. In October 2015, LNC filed *LNC IV* in the 4th Judicial District Court for the Parish of Ouachita, alleging breach of contract and LUTPA claims as to Mayborn's "Non-Spill" Insulated Straw Tumbler. *LNC IV* was dismissed without prejudice, after the parties executed a settlement

agreement dated December 18, 2015.

On March 23, 2018, LNC filed suit against Mayborn in the Fourth Judicial District Court, Ouachita Parish, Louisiana, and the case was removed to this Court shortly thereafter. The "Alleged Products" at issue in this case are: (1) the Insulated Straw Tumbler; (2) the Trainer Straw Cup; (3) the Tuff Stuff Straw Tumbler; and (4) the Transition Cup. [Doc. No. 78 at ¶ 38]. These four Alleged Products were not at issue in *LNC I*. LNC contends that in marketing and selling the Alleged Products, Mayborn has "willfully and intentionally breached one or both distribution agreements by improperly using LNC's products, product designs, and non-confidential proprietary information to market and sell competing products without LNC's consent and without paying the royalty Jackel expressly agreed it would pay." [Doc. No. 210-1 at 5].

In response to the Complaint, Mayborn moved for sanctions and, upon the filing of LNC's proposed Amended Complaint, sought sanctions in a second motion. [Doc. Nos. 28, 47]. On December 5, 2018, the Court held an evidentiary hearing on Mayborn's sanctions motions. The hearing focused on the 2003 and 2008 Agreements, the State Court Action Judgment and Permanent Injunction, the First Settlement Agreement which was limited to the seven Litigated Products, the four Alleged Products, and various product designs contained in LNC's Nuby and *Natural Touch* branded products. On March 14, 2019, the Court denied both sanctions motions and granted LNC's leave to amend the Complaint. [Doc. Nos. 76, 77]. LNC filed an Amended Complaint on that same day. [Doc. No. 78]. A state court case is also pending, but is stayed pending the resolution of this case. [Doc. No. 198-1 at 8 (Hearing Tr. *Luv N' Care v. Jackel nternational Ltd.*, No. 19-2306, April 14, 2021 (4th JDC, Ouachita Parish))].

On February 8, 2021, Mayborn filed its Answer and Counterclaim to LNC's Amended

Complaint. [Doc. No. 168]. Mayborn's Counterclaim contains five counts. Counts I and II seek declaratory judgments that LNC's claims are barred by the doctrines of collateral estoppel, res judicata, acquiescence, and waiver. *Id.* at ¶¶ 105–14. Count III pleads unfair competition in violation of LUTPA by LNC's predatory litigation. *Id.* at ¶¶ 115–22. Count IV pleads breach of contract because "[t]o the extent LNC's allegations of breach of contract against Mayborn are valid, the 2003 and 2008 distribution agreements must then also prohibit LNC from using in any fashion Mayborn's products or product designs and the agreements then impose continuing obligations not to do so on the part of LNC." *Id.* at ¶¶ 123–34. Count V pleads unfair competition in violation of LUTPA by LNC's conduct surrounding its breach of contract. *Id.* at ¶¶ 135–49.

On May 24, 2021, the parties held a status conference and agreed to have an "early dispositive motion" period. [Doc. No. 197]. On November 2, 2021, the Court denied LNC's Motion for Leave to File Second Supplemental and Amending Complaint [Doc. No. 102], which started the early dispositive motion period. Mayborn filed five summary judgment motions [Doc. Nos. 211–14]. LNC filed the present motion [Doc. No. 210], and a second motion for summary judgment [Doc. No. 242]. By the parties' agreement, and with the Court's permission, discovery has been stayed in this case until this round of summary judgment motions have been briefed and decided.

## II. LAW AND ANALYSIS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (citation omitted). And "[a] fact is 'material' if its resolution in favor of

one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In opposing a motion for summary judgment, the adverse party must "designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997). In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**B. Rule 56(d)**

Federal Fed. R. Civ. P. 56(d) provides for the denial or the continuance of motions for summary judgment when sufficient discovery has not occurred. Rule 56(d) explains that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "Under this Rule, motions for summary judgment must be 'refused where the nonmoving party has not had the opportunity to discover information that is essential to its

opposition.'" *Bobbys Country v. Waitr Holdings*, No. 2:19-CV-00552, 2021 U.S. Dist. LEXIS 246132, at *3 (W.D. La. Sep. 1, 2021) (quoting *Anderson*, 477 U.S. at 242, n.5). "Rule 56(d) is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Id.* at *5 (citation omitted). Requests under Rule 56(d) are "broadly favored and should be liberally granted." *Id.* (citation omitted).

### C. LNC's Motion to Dismiss Count I and Count II of Mayborn's Counterclaim

LNC argues that I and II of Mayborn's Counterclaim recast Mayborn's affirmative defenses as affirmative claims. [Doc. No. 210-1 at 8-9]. LNC contends that the resolution of its claims will resolve Mayborn's affirmative defenses as well as Counts I and II of Mayborn's Counterclaim, thereby rendering the declaratory judgment counts entirely superfluous. *Id.* at 9.

Mayborn responds that it filed its Counterclaim as "an action for Declaratory Judgment and other relief brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02." [Doc. No. 230 at 13] (citing Doc. No. 168 at ¶ 93). Mayborn argues that these counts are not redundant of its affirmative defenses. *Id.* Mayborn further argues that the Counterclaim counts and affirmative defenses are governed by different procedural rules and serve different purposes. *Id.* Mayborn contends that these counts protect it from LNC's strategy of repeatedly suing Mayborn on the same two agreements. *Id.*

The Court agrees with Mayborn that its counterclaims are not superflous. *Finalrod Ip v. Endurance Lift Sols.*, No. 2:20-cv-00189-JRG-RSP, 2020 U.S. Dist. LEXIS 231909, at *6 (E.D. Tex. Oct. 30, 2020) ("An affirmative defense can only survive as long as the underlying claim is still active. Counterclaims, on the other hand, can survive independently. Finalrod does not address the possibility that if its claim is dismissed—due to settlement, motion practice, or any number of other reasons—Endurance may still want to pursue its claims . . . . Such a situation is quite possible and, thus, provides the counterclaim a useful purpose despite the existence of a

similar affirmative defense.").

Moreover, LNC did not provide a persuasive reason to dismiss these counts. LNC does not argue that the Counterclaims confuse the issues of the case or would increase discovery. *See, e.g., Finalrod IP*, No. 2:20-cv-00189-JRG-RSP, 2020 U.S. Dist. LEXIS 231909, at *7 (E.D. Tex. Oct. 30, 2020) ("Finalrod does not explain how having both adds to its burden. If they truly are the same, its added burden would be minimal.").

Finally, the case law does not support LNC's motion. In *Robinson v. Hunt Cty., Texas*, 921 F.3d 440, 451 (5th Cir. 2019), the Fifth Circuit found that the district court abused its discretion by finding "declaratory judgment claims [] redundant of [plaintiff's] claims for injunctive relief" and "for compensatory damages" because the "district court's dismissal order d[id] not explain how resolving [Plaintiff]'s other claims would render a declaratory judgment superfluous." *Id*. Accordingly, LNC's Motion to dismiss Count I and Count II of Mayborn's Counterclaim is DENIED.

### D. LNC's Motion to Dismiss Count III of Mayborn's Counterclaim

LNC argues that the prohibited practices under LUTPA are "extremely narrow" and are only designed to protect against "deceptive acts or practices in the conduct of any trade or commerce." [Doc. No. 210-1 at 10] (citing *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025). LNC contends that Count III of Mayborn's Counterclaim alleges LNC violated the LUTPA by pursuing "predatory and repeated litigation" by "repeatedly suing [Plaintiff] on the two distribution agreements" at issue. *Id.* LNC contends that Mayborn's allegations are insufficient to give rise to a claim under the LUTPA as a matter of law. *Id.*

Mayborn responds that LNC's summary judgment motion should be denied because

once it has obtained the needed discovery, it will be able to prove that Mayborn's predatory litigation tactics violate LUTPA. [Doc. No. 230 at 16]. Mayborn argues that this count has been sufficiently pled, and that LNC is wrong that Mayborn's allegations are only based on LNC's "assertion of legal rights" and "alleged misconduct during the course of litigation." *Id.* (citing Doc. No. 210-1 at 10–11). Mayborn argues that Count III "has set forth facts, which, accepted as true, state claims for relief under the distribution agreements and the LUTPA that are plausible on their face." *Id.* (citing Doc. No. 153 at 9).[2]

Mayborn further contends that like LNC's own LUTPA claim, it "name[s] and describe[s]" its LUTPA count. *Id.* According to Mayborn, the allegations plead systematic, intentional conduct that has lasted for over a decade and that directly relates to its strategic decisions on which products to develop and sell. *Id.* at 17. Mayborn further argues that its allegations are similar to LNC's LUTPA claim, and the Court found LNC's claim adequately pled. *Id.* at 17-18.

To the extent that LNC contends that Mayborn's claims are not adequately pled, the Court disagrees. Similar to LNC's LUTPA claim, Mayborn provides allegations identifying the LUTPA violations. For example, Mayborn pleads that "LNC has engaged in unfair and deceptive trade practices for the purpose and with the effect of disrupting and impairing Mayborn's business dealings in the United States and globally." [Doc. No. 168 at ¶ 118]. Mayborn provides alleged instances of this, including that "LNC has willfully and deliberately hidden from Mayborn their unfair and deceptive practices." *Id.* Mayborn further alleged that LNC's conduct was an "effort to disrupt and impair Mayborn's business dealings" and that "Mayborn has suffered damages as a direct result . . . ." *Id.* at ¶¶ 119–20.

---

[2] It appears that Mayborn intended to cite to Doc. No. 153, and not Doc. No. 135.

Finally, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court agrees with Mayborn that at this time there are genuine issues of material fact related to whether LNC has engaged in behavior proscribed by LUTPA.  Thus, LNC's Motion to dismiss Count III of Mayborn's Counterclaim is DENIED.

### E.  LNC's Motion to Dismiss Count IV of Mayborn's Counterclaim

LNC argues that the purpose of the distribution agreements was for LNC to license its confidential and nonconfidential information and designs to Mayborn. [Doc. No. 210-1 at 12-13].  According to LNC, there was no reason for the agreements to provide reciprocal contractual rights flowing to Mayborn that would bar it from using Mayborn's products and product designs in the public domain. *Id.* at 13.  LNC contends that the agreements contain no reciprocal royalty rights in Mayborn's favor. *Id.*  LNC further argues that Count IV of Mayborn's Counterclaim incorrectly asserts that "the 2003 and 2008 distribution agreements must then also prohibit LNC from using in any fashion Mayborn's products or product designs and the agreements then impose continuing obligations not to do so on the part of LNC." *Id.* (citing Doc. No. 168, at ¶ 124).  Finally, 0LNC contends that Mayborn is trying to read into the distribution agreements a reciprocal obligation. [Doc. No. 210-1 at 14].

Mayborn responds that Count IV explains that "[t]o the extent LNC's allegations of breach of contract against Mayborn are valid, the 2003 and 2008 distribution agreements must then also prohibit LNC from using in any fashion Mayborn's products or product designs and the agreements then impose continuing obligations not to do so on the part of LNC." [Doc. No. 230 at 20 n. 5] (citing Doc. 168 at ¶ 124).  Mayborn argues that LNC's entire complaint in this case is based on reading the surviving provisions of the agreements as extending to individual,

disembodied product features, such as a "silicone top" and "a straw having a valve." [Doc. No. at 20] (citing Doc. No. 78 at ¶ 18). Mayborn contends that Count IV simply says: "Well, if that's true, then you breach these agreements too, LNC." *Id.* Mayborn argues that the Court will only need to consider Count IV if the Court denies its other summary judgment motions. *Id.*

Mayborn further argues that LNC's attack on this count fails for three reasons. Mayborn first contends that LNC's admission that the surviving provisions of the agreements unilaterally favor LNC, renders the agreements "null and void" as a matter of law under Louisiana's noncompetition statute. *Id.* at 21. Mayborn also contends that LNC's one-way interpretation is not correct, and conflicts with the language of the agreements. *Id.* at 21-22 (citing Doc. No. 1-5 at ¶ 21). Finally, Mayborn argues that LNC's interpretation assumes facts about the parties' intent without evidentiary support while failing to assume these facts in Mayborn's favor. [Doc. No. 230 at 24]. According to Mayborn, LNC's motion should be denied under Rule 56(d) until Mayborn has obtained discovery to adequately respond. *Id.*

The Court agrees with Mayborn that at this time there are genuine issues of material fact related to the agreements as it relates to Count IV. Thus, LNC's Motion to dismiss Count IV of Mayborn's Counterclaim is DENIED.

### F. LNC's Motion to Dismiss Count V of Mayborn's Counterclaim

LNC argues that Count V of Mayborn's Counterclaim asserts that it violated the LUTPA by using Mayborn's products and product designs in violation of the distribution agreements. [Doc. No. 210-1 at 16]. LNC contends that the LUTPA "does not provide an alternate remedy for simple breaches of contract." *Id.* (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (internal citation omitted)). According to LNC, Mayborn has alleged nothing more than a garden-variety breach of contract claim, which it contends is insufficient as a matter of law. *Id.* at 17. In the alternative, LNC contends that Mayborn's claim fails because the

distribution agreements do not prohibit LNC from using Mayborn's products and product designs that are in the public domain. *Id.* at 17-18.

Mayborn responds that LNC's motion regarding Count V is written in terms of "dismissal," despite the motion being one for partial summary judgment. [Doc. No. 230 at 26]. Mayborn contends that Count V of its Counterclaim is adequately pled because it contains at least the same amount of detail as LNC's own LUTPA claim, which the Court held adequately stated a claim for relief. *Id.* at 26-29. Mayborn further argues that the Court should also deny summary judgment under Rule 56(d) because its needs discovery to adequately respond. *Id.* at 29.

The Court agrees with Mayborn that at this time there are genuine issues of material fact related to whether LNC has engaged in behavior proscribed by LUTPA. Thus, LNC's Motion to dismiss Count V of Mayborn's Counterclaim is DENIED.

### G. Motion for Relief Pursuant to Rule 56(d)

Mayborn requests that the Court deny LNC's motion with respect to Counts III–V of its counterclaim under Rule 56(d). Mayborn argues that LNC's early summary judgment motion as it relates to Counts III–V will require discovery before it is in a position to respond to LNC's motion on these counts.

LNC responds that Mayborn is now requesting to conduct one-sided discovery. [Doc. No. 236 at 7]. LNC argues that Mayborn should have immediately expressed its need for discovery, instead of waiting to file its Rule 56(d) Motion until after the deadline for filing oppositions. *Id.* at 8. LNC contends that Mayborn should have filed its Rule 56(d) Motion requesting discovery months ago and has no explanation for its lack of diligence. *Id.* at 9. According to LNC, the

timing and circumstances of Mayborn's Rule 56(d) Motion are highly questionable and should be denied. *Id.*

LNC further argues that Mayborn should not be permitted discovery when it was the party who wanted early dispositive motions to be filed and decided, prior to the parties conducting any discovery. *Id.* at 10.  LNC also contends that the declaration of Mayborn's lead counsel, Mr. Goetz, fails to demonstrate how the facts sought through discovery are "essential" to opposing LNC's Motion. *Id.*  LNC argues that the Court should rule on LNC's Motion so that the parties can then proceed to engage in Phase 1 Fact Discovery followed by a settlement conference. *Id.* at at 13.  According to LNC, Mayborn is now claiming it needs discovery to find out if there may have been a LUTPA violation. *Id.* at 15.

LNC next contends that the requested discovery is not "essential" to LNC's opposition as is required under Rule 56(d). *Id.* at 16.  LNC further argues that additional discovery cannot be used to cure Mayborn's lack of facts supporting its claims. *Id.* at 15.  According to LNC, Mayborn's request for discovery would only serve to delay resolution of its Motion. *Id.* at 18.  LNC also argues that the Court should deny Mayborn's Rule 56(d) Motion and resolve the six (6) pending dispositive motions without requiring one-sided discovery. *Id.* at 18-19.  In the alternative, LNC suggests that the Court should deny LNC's Motion at this time so that the parties can engage in the agreed upon phased discovery plan. *Id.* at 15.

Mayborn responds that LNC misinterprets its motion as seeking "to now require LNC to unilaterally respond to Jackel's non-sales data discovery (i.e., Phase 2 Fact Discovery) when LNC's corresponding opportunity to engage in Phase 2 Fact Discovery must await resolution of the pending dispositive motions." (Doc. No. 253 at 5) (citing Doc. 236 at 4).  Mayborn states that it is not seeking unilateral discovery. [Doc. No. 253 at 5].  Mayborn also argues that it properly

filed its motion at the deadline for all summary judgment oppositions, and that LNC's argument of delay is based on inapposite cases where discovery was previously available or unnecessary. *Id.* Mayborn argues that Mr. Goetz's Declaration satisfies Rule 56(d), and that discovery is required for Count III, IV, and V. *Id.* at 7-10. Finally, Mayborn contends that its opposition brief does not contradict its request for discovery. *Id.* at 11.

As discussed above, this case has a somewhat unusual procedural posture. By the parties' agreement, and with the Court's permission, discovery has been stayed in this case until the current round of early summary judgment motions have been briefed and decided. When discovery was stayed, the Court was under the impression that the summary judgment motions contemplated by the parties would not raise genuine issue of material fact. However, when the Court considers the facts in the light most favorable to the non-movant and draws all reasonable inferences in its favor, the Court finds that at this stage there are genuine issues of material facts related to Counts III, IV, and V of Mayborn's Counterclaim. Moreover, the Court finds that the parties should be given the opportunity to discover evidence that can further support their claim. Accordingly, the Court GRANTS Mayborn's motion for relief pursuant to Rule 56(d).

### III.   CONCLUSION

For the foregoing reasons, LNC's Motion for Partial Summary Judgment Dismissing the Defendants' Counterclaim [Doc. No. 210] is **DENIED**. Mayborn's Motion for Relief Pursuant to Rule 56(d) [Doc. No. 231] is **GRANTED**.

MONROE, LOUISIANA, this 23rd day of September 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE